201 N.J. Super. 558 (1985)
493 A.2d 619
WILLIAM BUTLER AND MILDRED BUTLER, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
PPG INDUSTRIES, INC., DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1985.
Decided June 3, 1985.
*561 Before Judges FRITZ, GAULKIN and LONG.
Eugene M. Purcell argued the cause for PPG Industries, Inc. (Purcell, Ries, Shannon & Mulcahy, attorneys; Michael F. O'Neill, on the brief).
Thomas T. Warshaw argued the cause for William and Mildred Butler (Drazin and Warshaw, P.C., attorneys; Thomas T. Warshaw and Thomas J. DiChiara, on the brief).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiffs William Butler and his wife Mildred brought this strict liability action to recover damages for personal injuries which Butler sustained while working with caustic soda flakes allegedly manufactured and marketed by defendant PPG Industries, Inc. (PPG). The essence of the claim was that the product was marketed with inadequate warnings. The jury found for the Butlers and assessed damages in the sum of $525,000. Based upon the jury's attribution to Butler of 20% of "the total fault that was the proximate cause of the accident," the trial judge entered judgment in the sum of $431,000 together with prejudgment interest. PPG thereafter moved unsuccessfully for a new trial, remittitur or judgment n.o.v. PPG now appeals from the judgment and the denial of its post-trial motion; the Butlers cross-appeal from that portion of the judgment which reduces the damage award to reflect Butler's comparative fault.
PPG first contends that Butler failed to sustain his burden of proving that the product which caused his injuries *562 was manufactured by PPG. We find that contention unpersuasive. Butler described "the big, black, fiber drum, like plastic" from which he took the caustic and identified photographs of the drum as well as the label affixed to it. The photographs showed the barrel with a large label describing its contents as PELS Caustic Soda Beads, manufactured by PPG. Butler's co-worker, Gregory Lodato, similarly identified the photographs as depicting the drum from which Butler had taken the caustic immediately prior to the accident. To be sure, the jury was also presented with testimony which could have supported a finding that the "flakes" described by Butler were different in size and shape from those manufactured by PPG. But it was for the jury to evaluate all of the testimony and the conflicting inferences which arose from that testimony. The record amply supports the jury finding that the caustic soda involved here was the product of PPG.
We also find without merit PPG's contention that its warning label was sufficient as a matter of law. The Butlers' expert pointed out that the label was devoid of any warning that an explosion or eruption could result, as it did, from mixing the caustic with hot water or steam. Whether such warnings were "essential to make the use of [the] product safe" was clearly a jury question. Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 243 (1981). And neither Butler's failure to read the label nor his prior experience with caustics bars his claim as a matter of law. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198 (1984).
PPG also urges that the trial judge erred in barring its proffered proofs as to the conduct of Butler's employer, Cellofilm, Inc. (Cellofilm). PPG sought to show that Cellofilm was obligated by OSHA[1] regulations to provide protective clothing for employees working with caustic soda, that Cellofilm failed to do so and that Cellofilm also failed to adequately train Butler *563 in the use of caustics and to enforce its own safety rules. Those proofs, PPG argues, should have been admitted as bearing on (1) the adequacy of the warnings given and (2) whether any deficiency in the warnings was a proximate cause of the accident. We are satisfied that the proofs were properly rejected.
The adequacy of a warning is to be evaluated in terms of what the manufacturer actually knew and what it should have known based on information that was reasonably available or obtainable and that should have alerted a reasonably prudent person to act. Campos, 98 N.J. at 206. Here there appears no dispute that PPG had actual knowledge of the risk. Moreover, there is no suggestion that Butler's use of the product was beyond its intended or reasonably anticipated scope. Thus PPG had a duty to warn Butler of all hidden or latent dangers arising out of his use of the product. Ibid. The fact that Cellofilm may have failed, negligently or otherwise, to take steps to remedy the absence of warnings or to protect Butler from injury resulting therefrom would not exculpate PPG. The public interest in assuring that defective products[2] are not placed into the channels of trade imposes a duty on the manufacturer to take feasible steps to render his product safe; the manufacturer may not rely on "the haphazard conduct of the ultimate purchaser" to remedy or protect against defects for which he is responsible. See Bexiga v. Havir Manufacturing Corp., 60 N.J. 402, 410 (1972); see also Johnson v. Salem Corp., 97 N.J. 78, 94 (1984); Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 397 (1982); Finnegan v. Havir Manufacturing Corp., 60 N.J. 413, 423 (1972).
For similar reasons, the proffer that Cellofilm's alleged negligence was a proximate cause of the accident would not have exculpated PPG. Where the original defect, although *564 not the sole cause of the accident, constitutes a contributing or concurrent proximate cause in conjunction with the subsequent conduct of the purchaser, the manufacturer remains liable. Brown v. United States Stove Co., 98 N.J. 155, 171 (1984). In order to exculpate itself, the manufacturer must prove an intervening superseding cause or perhaps some other sole proximate cause of the injury. Ibid. Where, as here, the allegation is that the purchaser failed to take reasonable steps to protect against the defect created by the manufacturer, a jury will not be permitted to infer that the purchaser's negligence was the exclusive proximate cause of the accident. See Johnson, 97 N.J. at 95. But see Menna v. Johns-Manville Corp. 585 F. Supp. 1178 (D.N.J. 1984).
PPG argues that the rejection of its proofs of Cellofilm's alleged negligence is "totally contrary" to Freund. Freund, however, did not determine whether or in what circumstances proofs as to an employer's alleged negligence may properly be received; rather, it held that where a manufacturer attempts to defend itself "by emphasizing the negligence of others," the trial judge must charge the jury on concurrent negligence to assure that the jury is not "trapped into believing that it needed to weigh and compare one party's negligence against that of another to determine if a particular defendant should be held liable." Freund, 87 N.J. at 247. We also note that Freund was cited in Johnson in support of the finding that the employer's negligence "cannot constitute a defense for the defendants in these circumstances." 97 N.J. at 95 (emphasis added). In the present case, as in Johnson, the alleged negligence of Cellofilm could not exculpate PPG and there was accordingly no warrant for the jury to be presented with those proofs.
On their cross-appeal, the Butlers challenge only the reduction of the damage awards to reflect the jury's attribution of 20% contributory fault to Butler. We are satisfied that the issue of contributory fault was properly put to the jury. Evidence had been presented that Butler was aware that the caustic was a corrosive and that he used it on this occasion *565 without employing any of the safety gear or protective clothing which he had been instructed by his employer to use when working with the caustic. Although the caustic was made available for washing and cleaning Cellofilm trailer tanks, the accident occurred not during the cleaning operation but while Butler was performing an assigned task to locate and correct a leak in one of the trailers. Butler conceded that he was left to his own resources to determine how to find and correct the leak; the accident occurred when he used the caustic to attempt to loosen up what he considered to be an obstruction in the tank. In that setting the jury could properly find that Butler had "voluntarily and unreasonably exposed himself to a known risk" as charged by the trial judge. Butler was not engaged at his assigned task on a machine nor was he otherwise deprived of any meaningful choice as to the use of the caustic. See Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 167 (1979); see also Green v. Sterling Extruder Corp., 95 N.J. 263, 270 (1984). In our view the "employment circumstances" (Green, 95 N.J. at 270) disclosed here do not justify invocation of the policy which exculpates an employee from the consequences of his voluntary and unreasonable encountering of a known risk. Cf. Suter, 81 N.J. at 193 (Clifford, J., concurring).
We therefore affirm the judgment in all respects.
NOTES
[1] Occupational Safety and Health Act of 1970, 29 U.S.C.A. §§ 651-678.
[2] A "defect" in a strict liability action may consist of a manufacturing flaw, a design defect, or an inadequate warning. Feldman v. Lederle Laboratories, 97 N.J. 429, 449 (1984).