Kathy MORRIS; Arthur Patrick, Individually; Lillian A. Patrick, Individually and as Guardian of the Person and the Estate of Marian Raylene Fielding (Non Compos Mentis) and as the Guardian of the Person and the Estate of Roger Dale Fielding II, A Minor Child, Appellants,

v.

ADOLPH COORS COMPANY and Anheuser-Busch, Inc., Appellees.

No. 2–86–239–CV.

Court of Appeals of Texas, Fort Worth.

July 22, 1987.

Rehearing Denied Sept. 9, 1987.

The Wesbrooks Firm, P.C. and Perry Wesbrooks, Wichita Falls, for appellants.

Shannon, Gracey, Ratliff & Miller and Vic Anderson, Jr. and Melissa Webb, Fort Worth, for appellee Anheuser-Busch, Inc.

McBryde & Bennett and John McBryde and Nora Toohey, Fort Worth, for appellee Adolph Coors Co.

Before FENDER, C.J., and BURDOCK and FARRIS, JJ.

## OPINION

FARRIS, Justice.

This is an appeal by Kathy Morris, et al., plaintiffs in the trial court below, from an order of the trial court dismissing their suit against Adolph Coors Company and Anheuser-Busch, Inc., for failing to state a cause of action against appellees. In their sole point of error, appellants complain that the trial court's dismissal of their claim against appellees was improper because their first amended original petition alleged several legally recognized causes of action against these appellees.

We affirm.

On May 15, 1983, at approximately 1:00 a.m., Marian Raylene Fielding, Kathy Morris, and Roger Dale Fielding II sustained injuries resulting from an automobile collision caused by an 18 year old drunk driver. The 18 year old driver had become intoxicated at a high school graduation party where he allegedly consumed beer manufactured by the two appellees.

Appellants brought suit against appellees, the driver, and the social hosts who served the alcoholic beverages. Appellees specially excepted to appellants' original petition, claiming that appellants did not plead a legally recognized cause of action against appellees. Following a hearing, the trial court sustained appellees' special exceptions and granted appellants leave to amend. The appellants then filed their first amended original petition, essentially alleging the same causes of action as contained in their original petition. Subsequently, appellees filed a "Motion To Dismiss," reiterating the objections of their special exceptions. On August 4, 1986, the trial court ordered the case against appellees to be severed from the claims asserted by appellants against other defendants, and dismissed appellants' case as to appellees. The order recited that the trial court found no cause of action alleged against appellees. Appellants appeal the order of dismissal.

In their first amended original petition, appellants alleged six basic theories of liability against appellees. Although separately listed in the petition, the allegations against each appellee are substantially identical. Appellants claimed, as theories of liability against appellees, strict liability for design defect and marketing defect, negligence, competition and Trade Practices Act violations, breach of warranty, and violations of the Texas Alcoholic Beverage Code. The thrust of each theory of liability alleged by appellants is a claim that appellees had a duty to warn the beer consuming public of the dangers of consuming their product and operating a motor vehicle while in an intoxicated state. Although acknowledging in their brief that no duty currently exists under present Texas law, appellants assert that two reasons have given rise to the necessity of establishing such duty. First, appellants assert that the present social conditions and changes in circumstances in the recent years regarding drunk drivers require that beer manufacturers share the burden of warning the general public of the dangers of drinking and driving. Appellants cite several statistical reports indicating the growing nation-

al problem of drunk driving. Secondly, appellants contend that the recent broadening of rights by the Texas courts to allow for the recovery of injuries resulting from defective products, dictates an expansion in this area to allow for the recovery from alcohol manufacturers by innocent bystanders who are injured as a result of a drunk driver. *See El Chico Corp. v. Poole,* 732 S.W.2d 306 (1987); *Joleemo, Inc. v. Evans,* 732 S.W.2d 306 (1987); *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983). Much of appellants' brief is dedicated to the increasing tragedy of intoxicated drivers and the damage created by them. While it is not our intent to overlook or in any way belittle this problem, the question presented to us on appeal is whether the first amended original petition of appellants stated a legally recognized cause of action against these particular appellees.

A judgment dismissing a cause for failure of the pleadings to state grounds for relief can be sustained only if the allegations of the pleadings do not state a cause of action. *Briscoe v. Transworld Financial Services,* 705 S.W.2d 288, 290 (Tex.App.—San Antonio 1986), *rev'd on other grounds,* 722 S.W.2d 407 (Tex.1987). To determine whether a cause of action has been pled, the pleadings must be liberally construed and the court must accept as true all material factual propositions alleged, whether evidentiary or factual conclusions, as well as factual propositions which reasonably can be inferred from the allegations. *Id.* We will address each of the theories of liability as alleged by appellants in their first amended original petition and explain why each is not a valid cause of action under Texas law against appellees.

### I. STRICT LIABILITY FOR MARKETING DEFECT AND DESIGN DEFECT

Texas adopted the RESTATEMENT (SECOND) OF TORTS sec. 402A in 1967, thereby recognizing strict liability as a cause of action. *See McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 789 (Tex. 1967); *Shamrock Fuel & Oil Sales Co. v. Tunks,* 416 S.W.2d 779, 783 (Tex.1967). In order to establish a cause of action for strict liability, the party alleging such must establish four elements: (1) the product was defective; (2) the product reached the consumer without substantial changes in its condition from the time it was originally sold; (3) the defect rendered the product unreasonably dangerous; and (4) the unreasonably dangerous defect caused an injury to the consumer. *See* RESTATEMENT (SECOND) OF TORTS sec. 402A (1965). Defective products are commonly classified as either manufacturing defects, design defects, or marketing defects resulting from a lack of adequate warnings or instructions. *Thomas v. St. Joseph Hospital,* 618 S.W.2d 791, 797 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Helicoid Gage Div. of Am. Chain & Cable Co. v. Howell,* 511 S.W.2d 573, 575 (Tex.Civ. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

In counts six and nine (referring to Adolph Coors Company) and counts twelve and fifteen (referring to Anheuser-Busch, Inc.) of their first amended original petition, appellants alleged that appellees' product was defectively marketed and defectively designed. However, both claims relate to the lack of warnings accompanying the alcoholic beverages and the advertisements promoting same.

The alcoholic beverage manufactured by appellees was not "defective," either by design or by marketing, or in an "unreasonably dangerous condition," as those terms have been defined by the Restatement of Torts and by prior case law. A product is not in a "defective" condition when it is safe for normal handling and consumption. *See* RESTATEMENT (SECOND) OF TORTS sec. 402A comment h (1965).

> If the injury results from ... abnormal consumption, as where a child eats too much candy and is made ill, the seller is not liable.

*Id.* Furthermore, in order for strict liability to apply, the product must be defective rendering it "unreasonably dangerous."

Many products cannot possibly be made entirely safe for all consumption,

and any food or drug necessarily involves some risk of harm, if only from over-consumption.

*Id.* at comment i. In order to constitute "unreasonably dangerous," the product sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. *Id.*

Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous.

*Id.*

■■■ Citing the RESTATEMENT (SECOND) OF TORTS sec. 402A, comments h and j, appellants claim that appropriate warnings are required for products such as those manufactured by appellees. The failure to adequately warn or instruct can constitute a defect. *Id.* at comment j. However, a duty to warn arises only when the product is "unreasonably dangerous." *Johnson v. Jones-Blair Paint Co.,* 607 S.W.2d 305, 306 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.); *Hamilton v. Motor Coach Industries, Inc.,* 569 S.W.2d 571, 577 (Tex.Civ.App.—Texarkana 1978, no writ). The product manufactured by appellees was not in an "unreasonably dangerous condition," as that term is defined by the Restatement.

[A] seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is *generally known and recognized.* RESTATEMENT (SECOND) OF TORTS sec. 402A comment j (1965) (emphasis added). The ordinary consumer in today's society, with the ordinary knowledge common to the community as to the characteristics of the product, knows of the dangers of driving while intoxicated. Whether or not this particular driver in the instant case knew of the dangers is irrelevant, because comment i requires that only the "ordinary

consumer" have knowledge. Where the danger is evident to most users of a product, there is no duty to warn an occasional, inexperienced user. *See Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 693 (Tenn.1984).

■■ Although *Darryl v. Ford Motor Co.,* 440 S.W.2d 630 (Tex.1969), did extend the strict liability recovery to nonusers and nonconsumers, as alleged by appellants, the case did not change the substantive liability law that there must be a defect in the product that renders it unreasonably dangerous. Comments h, j and i of the RESTATEMENT (SECOND) OF TORTS sec. 402A are determinative of whether a product is "defective" and in an "unreasonably dangerous condition" and *Darryl* does not affect this law in Texas.

The Seventh Circuit Court of Appeals held in 1982 that an alcoholic beverage, in its regular form, is not unreasonably dangerous such that it would impose the duty upon a manufacturer or a distributor of such a beverage to warn of the risks involved with over-consumption of the product. *Garrison v. Heublein, Inc.,* 673 F.2d 189, 190 (7th Cir.1982). The court held that the dangers involved in the uses of an alcoholic beverage are common knowledge to the general public, and "the product cannot be regarded as unreasonably unsafe." *Id.; see also Pemberton,* 664 S.W.2d at 693 (manufacturer of alcoholic beverage had no duty to warn of dangers resulting from consumption of product because risks are within common knowledge of ordinary consumer); *Maguire v. Pabst Brewing Co.,* 387 N.W.2d 565 (Iowa 1986) (no warning required of beer manufacturers because risks of intoxication to beer consumers are "sufficiently known to consumers at large.").

We have found no case in this jurisdiction or anywhere else in this country which has imposed liability on the manufacturer of an alcoholic beverage in a situation similar to that presented in the instant case. Beer, in its regular form, is not a product defectively designed or marketed. The ordinary consumer surely understands that over-consumption of an alcoholic beverage

may impair the motor skills and judgment necessary to drive an automobile. The law in Texas does not impose a duty to warn of widely known risks. Therefore, the trial court did not err in finding that the strict liability theory propounded by appellants was not a legally recognized cause of action against these appellees.

## II. NEGLIGENCE

In count six (referring to Adolph Coors Company) and count twelve (referring to Anheuser-Busch, Inc.), of their first amended original petition, appellants claimed that the failure on behalf of appellees to have warning labels on their products and to warn in their advertisements concerning the risks and dangers of drinking and driving, constituted negligence, which was the proximate cause of appellants' injuries.

■ In a negligence cause of action against a manufacturer for injuries suffered as a result of the manufacturer's product, the plaintiff must establish that: (1) the manufacturer owed a legal duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff suffered an injury as a result of the breach; and (4) the breach of duty was a proximate cause of the injury. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). Appellees' failure to warn of the possible dangers of drinking and driving is the basis of appellants' negligence claim. The threshold question becomes, therefore, whether there exists a duty recognized by law on behalf of appellees to warn of the dangers involved in operating a motor vehicle after having over-consumed their product. *See Jackson v. Associated Developers*, 581 S.W.2d 208, 212 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); PROSSER, THE LAW OF TORTS, sec. 30 at 143 (4th Ed. 1971).

■ Every manufacturer must provide a product that is reasonably safe for its foreseeable use, and has a duty to warn of dangers in the use of its product of which it knows or should know. *Rawlings Sporting Goods Co., Inc. v. Daniels*, 619 S.W.2d 435, 439 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.). Appellants assert that it was

reasonably foreseeable that persons consuming appellees' product would operate motor vehicles to and from places of consumption, and that there is a likelihood or probability of harm if reasonable care was not exercised. Appellants contend that such reasonable care is in the nature of warnings with regard to the danger of over-consumption of alcoholic beverages in connection with the operation of motor vehicles. Furthermore, appellants assert that, since appellees had actual knowledge that consumers drink and drive, a duty to warn of the risks incurred in such activity should be extended to these appellees.

The RESTATEMENT (SECOND) OF TORTS sec. 388 (1965) states that one who supplies a chattel for another to use is subject to liability for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier: (1) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and (2) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition;* and (3) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous (emphasis added). *See also Olivarez v. Broadway Hardware, Inc.*, 564 S.W.2d 195, 201 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Comment k of section 388, entitled "When Warning of Defects Unnecessary," interprets the second requirement as follows:

> One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved.

RESTATEMENT (SECOND) OF TORTS sec. 388 comment k (1965).

■ Like the strict liability cause of action raised by appellants, the question of

whether a duty to warn exists must be evaluated in light of the knowledge of ordinary consumers. of the risks inherent in drinking and driving. The dangers inherent in the consumption of alcoholic beverages and its affects on those operating motor vehicles are common knowledge to the ordinary consumer. *See Pemberton,* 664 S.W.2d at 693. As such, there is no duty in Texas imposed on these appellees to warn or inform consumers of such obvious dangers. *See* RESTATEMENT (SECOND) OF TORTS sec. 388 comment k (1965). Since there is no duty imposed on appellees in this case, the imposition of which was a necessary requirement for the negligence theory of liability alleged by appellants, the trial court did not err in dismissing appellants' cause of action based on this theory. *See Garrison,* 673 F.2d at 192.

## III. SECTION 17.12 OF THE TEXAS BUSINESS AND COMMERCE CODE

 In count eight (referring to Adolph Coors Company) and count fourteen (referring to Anheuser-Busch, Inc.), of their first amended original petition, appellants alleged that appellees, through their advertising, have misled the general public concerning their product by implying that beer is safe for human consumption and for all other general activities, including the operation of motor vehicles on public streets and highways, in direct violation of TEX. BUS. & COM.CODE ANN. sec. 17.12 (Vernon Supp.1987).

TEX.BUS. & COM.CODE ANN. sec. 17.-12 (Vernon Supp.1987), entitled Deceptive Advertising, provides as follows:

(a) No person may disseminate a statement he knows materially misrepresents the cost or character of tangible personal property ... or anything he may offer for the purpose of

(1) selling ... tangible personal property ... or anything he may offer, or

(2) inducing a person to contract with regard to the tangible personal property....

....

(d) A person who violates a provision of Subsection (a) or (b) of this Section is guilty of a misdemeanor and upon conviction is punishable by a fine of not less than $10 nor more than $200.

Although acknowledging that section 17.12 is a penal statute, appellants claim that appellees advertised and disseminated materially false representations concerning the character of their product for the purpose of selling such product in the marketplace, which gave rise to an implied right to recover civil damages since the violation of such statute contributed to and/or proximately caused the collision in question.

Section 17.12 does not provide for an "implied civil remedy," but by its own terms, provides for criminal penalties only. Furthermore, appellants are not within the class of persons protected by section 17.12. Again, by its own terms, the section provides for criminal penalties for materially misrepresenting a product in order to sell tangible personal property or induce "a person to contract with regard to the tangible personal property...." It is apparent that only persons who would be deceived by the misrepresentations and would thereby purchase the product, i.e., potential consumers, was the class of persons for whose benefits section 17.12 was enacted. Since appellants, as third parties who were injured by the tortuous actions of a consumer, were not within the class of persons for whose benefits section 17.12 was enacted, and any violation of this penal statute does not give rise to civil remedy, the trial court correctly dismissed appellants' case as to this theory of liability.

## IV. SECTIONS 106.01 AND 106.06 OF THE TEXAS ALCOHOLIC BEVERAGE CODE

In count ten (referring to Adolph Coors Company) and in count sixteen (referring to Anheuser-Busch, Inc.), of their first amended original petition, appellants alleged that appellees made alcoholic beverages available to minors (as defined in TEX.ALCO.BEV.CODE ANN. sec. 106.01 (Vernon Supp.1987)) by marketing such beverages in the marketplace without ade-

quate warnings in violation of TEX.ALCO. BEV.CODE ANN. sec. 106.06 (Vernon 1978). Appellants alleged that appellees were aware and deliberately placed their product in the marketplace where it was easily accessible to minors and with the intent to induce minors to consume the product. Furthermore, appellants complain that this was done without any effort to warn the minors concerning drinking and driving motor vehicles.

Supplying an alcoholic beverage to a minor is a violation of TEX.ALCO.BEV. CODE ANN. sec. 106.06 (Vernon 1978), as follows:

> (a) Except as provided in Subsection (b) of this section, a person commits an offense if he purchases an alcoholic beverage for or gives or knowingly makes available an alcoholic beverage to a minor.

> (b) A person may purchase an alcoholic beverage for or give an alcoholic beverage to a minor if he is the minor's adult parent, guardian, or spouse, or an adult in whose custody the minor has been committed by a court, and he is visibly present when the minor possesses or consumes the alcoholic beverage.

> (c) A violation of this section is a misdemeanor punishable by a fine of not less than $100 nor more than $500.

Appellants claim that section 106.-06 does not require that there be a direct sale of the beverage to the minor in order for there to be a violation of this statute. We disagree. Actual knowledge of the minor's underage status is imperative for liability under section 106.06. *See Dinh v. State,* 695 S.W.2d 797 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). In the *Dinh* case, the Houston Court of Appeals stated that a defendant in a section 106.06 action must have knowledge that the minor is under 21 years of age, i.e., by the appearance of the minor, etc. *See id.,* at 798.

But the State may not always rely on the minor's appearance alone, and may be required to introduce additional evidence showing that the accused had *actual knowledge of the purchaser's age.*

*Id.* (emphasis added); *see also Henderson v. State,* 37 Tex.Crim. 79, 38 S.W. 617, 618 (1897). Direct knowledge of the minor's age is essential to meet subsection (a) of the statute. *Dinh,* 695 S.W.2d at 798.

Only one who directly supplies the alcoholic beverage to the minor is in a position sufficient to ascertain the purchaser's age. Because appellees were the manufacturers, and not the persons who directly supplied the minor the alcohol, they could not have *"knowingly"* made the beverage available to the minor as contemplated by section 106.06. Furthermore, merely failing to provide proper warnings on their product and through their advertising does not constitute "knowingly" making available alcoholic beverages, as is alleged by appellants.

It must also be pointed out that this section, by its own terms, only provides for criminal penalties. TEX.ALCO. BEV.CODE ANN. sec. 106.06(c) (Vernon 1978); *see Dinh,* 695 S.W.2d at 798. The trial court did not err in concluding that appellants' allegations under TEX.ALCO. BEV.CODE ANN. sec. 106.06 (Vernon 1978), did not allege a legally recognizable cause of action against these appellees.

## V. MISREPRESENTATION OF BREACH OF EXPRESS OR IMPLIED WARRANTIES

In count eleven (referring to Adolph Coors Company) and count seventeen (referring to Anheuser-Busch, Inc.), of their first amended original petition, appellants alleged that appellees' failure to warn the consuming public of the hazards and dangers of the over-consumption of their product in conjunction with the operation of a motor vehicle, constituted either an express or implied warranty that appellees' product was safe for human consumption and driving a motor vehicle. Appellants further contend that the failure to warn of the dangers of drinking and driving constitute a breach of this warranty, which was the proximate cause of the injuries in question.

Much of appellants' brief concerns an alleged cause of action under RESTATE-MENT (SECOND) OF TORTS sec. 402B

(1965), entitled, "Misrepresentation by Seller of Chattels to Consumer." However, counts eleven and seventeen alleged only a breach of warranty and did not mention several of the necessary elements for liability under section 402B. Thus, we shall restrict our discussion to the breach of warranty theory of liability as alleged in appellants' first amended original petition.

■ In order to recover for the breach of an express warranty, a plaintiff must prove:

(1) an express affirmation of fact or promise by the seller relating to the goods;

(2) that such affirmation of fact or promise became a part of the basis of the bargain;

(3) that the plaintiff relied upon said affirmation of fact or promise;

(4) that the goods failed to comply with the affirmations of fact or promise;

(5) that the plaintiff was injured by such failure of the product to comply with the express warranty; and

(6) that such failure was the proximate cause of plaintiff's injury.

*General Supply & Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913, 917 (Tex.Civ.App. —Tyler 1972, writ ref'd n.r.e.); TEX BUS. & COM.CODE ANN. sec. 2.313 (Vernon 1968). Appellant failed to fulfill even the first requirement of an express warranty in that the failure to provide warnings is not an affirmation of fact or promise. Secondly, as has already been discussed, appellees' product is safe for consumption and therefore, even had appellees expressly warranted their product was safe for consumption, the goods did not fail to comply with the affirmations.

■ In order to establish that an implied warranty has been breached, the plaintiff must prove that the product was defective at the time it left the hands of the manufacturer or seller. *Jack Roach-Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262, 278 (Tex.1967); *Olsen v. Royal Metals Corp.*, 392 F.2d 116, 118 (5th Cir.1968). As we have already discussed, appellees' product in its regular, untainted form, was not defective at the time it left appellees' hands.

The trial court did not err in finding that appellants failed to allege a cause of action based on express or implied warranties against appellees.

Appellants' sole point of error is overruled and the judgment of the trial court is affirmed.